IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

WUXI LETOTECH SILICON MATERIAL )
TECHNOLOGY CO., LTD )
Wuyu Road, Yuqi Section )
Huishan Economic Development Zone )
Wuxi, Jiangsu, China 214183 )
)
              Plaintiff, )
  v. )
) No. 1:10-cv-356 (AJT/JFA)
APPLIED PLASMA TECHNOLOGIES )
a Virginia Partnership )
1729 Court Petit )
McLean, Virginia 22101 )
)
APPLIED PLASMA TECHNOLOGIES, )
LLC )
1729 Court Petit )
McLean, Virginia 22101, )
)
              Defendants. )
)

## Memorandum Opinion

On June 24, 2009 Plaintiff Wuxi Letotech Silicon Material Technology Co., Ltd ("Wuxi") and defendant Applied Plasma Technologies ("APT")[1] entered into a contract for Wuxi's purchase of a device known as a "300 kW hybrid plasma torch system, with remote discharge initiation" (the "Plasma Torch"), designed and manufactured by APT, for the price of $437,250 (the "Contract," included as Ex. 1 to Doc. No. 1). Wuxi never shipped the Plasma Torch and has claimed that it has been unable to obtain the United States export license necessary to do so. On April 9, 2010, Wuxi filed a four count complaint in which it seeks to recover in Count I, based on defendants' breach of

---

[1] In its Answer, APT and defendant Applied Plasma Technologies, LLC state that on March 11, 2010, after entering into the Contract, APT was converted from a partnership into a limited liability company.

contract, its initial deposit of $146,632.50 (the "Initial Deposit"), together with pre-judgment interest as of February 10, 2010.[2] This matter is before the Court on Wuxi's Motion for Partial Summary Judgment (Doc. No. 10) as to Count I. For the reasons stated below, the Court finds that there is no genuine issue of material fact concerning Wuxi's claim to the Initial Deposit and that it is entitled to judgment as a matter of law as to Count I.

## I. Background

The following additional facts are undisputed:

1. The Contract states that the Plasma Torch would be shipped to Wuxi within 180 days of APT's receiving Initial Deposit.

2. APT received the Initial Deposit on August 18, 2009.

3. On February 10, 2010, APT wrote to Wuxi indicating that the United States Export Control regulations prohibited it from shipping the Plasma Torch. APT also indicated the regulations were a "force majeure circumstance, which disable our contract." (Doc. No. 1, Ex. 2). Wuxi has made repeated demands for the Initial Deposit; and Defendants have refused to return the Initial Deposit to Wuxi.

4. The Contract states in Section F:

> It is [APT's] responsibility to make sure it will comply with all U.S. export control laws and regulations. If in any cases that the product failed to be shipped to outside the USA due to Export Control regulation, the supplier is to return all the payment received from [Wuxi].

5. With respect to force majeure, the Contract states that "[i]n the case of force majeure, the party affected should inform the other party within a week of the occurrence,

---

[2] The Complaint also asserts claims for fraud in the inducement (Count II); assumpsit-money had and received (Count III) and constructive trust (Count IV).

2

to reduce the damage that may occur." Contract, Section J. The Contract defines force majeure as follows:

> If the performance of any part of this contract by Seller is rendered commercially impracticable by reason of any strike, fire, flood, accident, or any other contingency, the non-occurrence of which was a basic assumption of this contract including war, embargo, government regulation, or any unforeseen shutdown of major supply sources or other like causes beyond the control of the Seller . . ., Seller shall be excused from such performance in part to the extent that it is prevented as for as long a period of time as . . . conditions render Seller's performance commercially impractical.

Contract at 7.

6. The Contract also has a separate "Termination" clause, on page 6, which states:

> In the event that this purchase is terminated for any reason, including Purchaser's failure to make partial payments as specified, Seller will make a reasonable effort to minimize the damages payable by Purchaser. However, Purchaser shall be liable for all expenses, overheads and allowance of a reasonable profit on work performed up to the date of termination. Purchaser agrees to pay Seller's invoice in accordance with invoice terms

7. In justification of their refusal to return the Initial Deposit, defendants contend (1) that the Contract was explicitly for the "design and manufacture" of the Plasma Torch, without necessarily shipping the Plasma Torch; (2) that they has spent more than $150,000 in designing the Plasma Torch and for that reason, under the Termination clause, Wuxi actually owes APT an additional amount in addition to the Initial Deposit; and (3) the applicable United States export law preventing the shipment of the Plasma Torch is "reasonable," since defendants believe that Wuxi planned to modify the Plasma Torch in order to use it in a weapons system.

3

8. The parties agree that their respective rights are based solely on the terms of the Contract, and defendants have not shipped the Plasma Torch or returned the Initial Deposit.³ *See* Memorandum in Support of Motion for Partial Summary Judgment (Doc. No. 10, Ex. 1) at 2; Reponses to Plaintiff's Motion for Summary Judgment (Doc. No. 19) at 2.

## II. Standard of Review

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996). The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 247-48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no

---

³ In their Answer (Doc. No. 13), defendants do not allege any affirmative defenses, but do allege that the "contract speaks for itself." Answer at ¶ 17.

*genuine* issue of *material* fact.") (emphasis in original). Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Id.* at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007).

### III. Analysis

The Court has jurisdiction under 28 U.S.C. § 1332. Venue is proper in this Court pursuant to 28 U.S.C. § 1391. Virginia Law applies.

Under Virginia law, where a contract is unambiguous, it is to be construed by the Court as a matter of law, and the Court is not to look outside the four corners of an unambiguous contract for its interpretation, excluding from its consideration as well either party's conduct under the contract. *See Bentley Funding Group, L.L.C., v. SK&R Group L.L.C.*, 269 Va. 315, 324, 332 (2005) ("Where no 'obscurity exists . . . the acts of the parties done under the contracts' bear no weight 'as an indication of their intention.'") (quoting *Moore v. Chesapeake & O. R. Co.*, 159 Va. 703, 730 (1933).

The Contract clearly and unambiguously required APT to not only design and manufacture the Plasma Torch, but also to ship the Plasma Torch within 180 days of receiving the Initial Deposit. *See* Contract, Sections D, E, and F. Defendants' position that the Contract merely contemplated the design of the Plasma Torch without shipment is therefore incorrect as a matter of law. Second, the Contract is clear and unambiguous that if APT could not export the Plasma Torch due to United States Export Control

regulations, the Initial Deposit would be returned to Wuxi. *See* Contract, Section F. The parties specifically contemplated the possibility that government regulations would prevent the shipment of the Plasma Torch and provided for that contingency. This explicit agreement as to the parties' rights and remedies in the event of an identified contingency is to be enforced in preference to any other, arguably applicable general provision, such as the Contract's force majeure clause. *See Donnelly v. Donatelli & Klein, Inc.*, 258 Va. 171, 180 (Va. 1999) ("[W]here there is a repugnancy, a general provision in a contract must give way to a special one covering the same ground.") (quoting *Bott v. N. Snellenburg & Co.*, 177 Va. 331, 339 (1941)). Moreover, there is nothing inconsistent with the enforcement of Section F, requiring APT to return the Initial Deposit in the event the Export Control regulations prevented shipment, and Section J, excusing APT's performance in the event of a force majeure. The government's refusal to issue an export license pursuant to the Export Control regulations, even if considered an act of force majeure, would only excuse shipment; it would have neither authorized defendants to retain possession of the Initial Deposit nor prevented them from returning it to Wuxi under Section F of the Contract.

The parties' explicit agreement in Section F also eliminates any argument, based on the Contract's Termination clause, that because APT had expended more than the Initial Deposit in designing the Plasma Torch, the Initial Deposit is to be applied to reimburse APT for its design costs. Finally, Wuxi's intended use of the Plasma Torch is irrelevant, as is whether or not the Export Control regulations that prevented shipment are "reasonable."

Because the Contract is not ambiguous, and the Contract clearly allocated the risks associated with the application of Export Control regulations to prevent shipment of the Plasma Torch, Wuxi is entitled to recover the Initial Deposit.

This Court may award prejudgment pursuant to Va. Code Ann. § 8.01-382. *See Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 633 (4th Cir. Va. 1999) ("Virginia law governs the award of prejudgment interest in a diversity case."); *Dairyland Ins. Co. v. Douthat*, 248 Va. 627 (Va. 1994) ("[Va. Code § 8.01-382] provides for the discretionary award of prejudgment interest by the trier of fact, who 'may provide for' such interest and fix the time of its commencement."). The Court finds and concludes that pre-judgment interest on the Initial Deposit is also appropriate under the facts and circumstances of this case and will be awarded from February 10, 2010, when APT informed Wuxi that the Export Control Regulations prohibited shipment of the Plasma Torch.[4] The amount in dispute is a sum certain and pre-judgment interest is necessary to place Wuxi in the same position it would have been in had defendants returned the Initial Deposit, as required.

For the above reasons, Plaintiff's Motion for Partial Summary Judgment (Doc. No. 10) will be granted. In that regard, the Court further finds that there is no just reason for delay in the entry of judgment as to Count I and a final judgment as to Count I will be entered pursuant to Fed. R. Civ. P. 54(b).

---

[4] Under Va. Code § 6.1-330.54., pre-judgment interest, when awarded, shall be assessed at the rate of 6% per annum. Here, pre-judgment interest through the date of this Memorandum Opinion calculates to $2,820.16.

An appropriate Order will issue.

/s/ Anthony J. Trenga
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
June 7, 2010